OPINION
{¶ 1} Plaintiff-appellant, Julie Thomas-Davidson, appeals a summary judgment rendered in favor of defendant-appellee, Joel B. Hughes, on the basis that appellant's negligence claim against appellee was time barred pursuant to the statute of limitations in R.C. 2305.10.
 {¶ 2} On February 10, 2003, appellee was traveling northbound on Cincinnati-Dayton *Page 2 
Road in Butler County, Ohio, when he struck appellant's truck from behind. As a result of the accident, appellee was cited for failure to maintain an assured clear distance.
 {¶ 3} On March 3, 2005, which was two years and 21 days after the February 10, 2003 accident, appellant filed a verified complaint against appellee in the Butler County Court of Common Pleas, alleging that appellee's failure to maintain an assured clear distance constituted negligence, and that she sustained physical injuries and incurred economic losses as a result thereof. Appellant also alleged that she "has been incapacitated and not competent at all times to assist in the prosecution of her claim[,]" and that appellee "has been out of the jurisdiction of this state for a period of time exceeding three weeks since February 10, 2003."
 {¶ 4} On October 4, 2005, appellee moved for summary judgment on the basis that appellant's negligence claim was filed 21 days past the expiration of the two-year statute of limitations for actions for bodily injury contained in R.C. 2305.10(A). On December 19, 2005, appellant filed a memorandum contra appellee's motion for summary judgment, arguing that the two-year statute of limitations in R.C. 2305.10(A) was tolled pursuant to the savings provisions in R.C. 2305.15 and 2305.16.
 {¶ 5} On May 18, 2006, the trial court issued a decision and entry, concluding that appellee was entitled to summary judgment on the grounds that (1) appellant's negligence action was barred under the two-year statute of limitations for actions for bodily injury contained in R.C.2305.10(A), and (2) appellant failed to demonstrate the existence of a genuine issue of material fact regarding whether she was entitled to the protections of the savings clauses in R.C. 2305.15 and 2305.16.
 {¶ 6} Appellant now appeals, raising two assignments of error:
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN REJECTING PLAINTIFF DAVIDSON'S CLAIM *Page 3 
THAT HER MENTAL UNSOUNDNESS TOLLED THE STATUTE OF LIMITATIONS BECAUSE THE COURT APPLIED LEGAL REQUIREMENTS — HOSPITALIZATION OR ADJUDICATION, AND THE TWO-PRONGED `FISHER TEST' — THAT ARE INAPPLICABLE WHEN THE UNSOUND MIND AROSE AT THE SAME TIME AS THE INJURY."
 {¶ 9} Appellant contends that she presented sufficient evidence to create a genuine issue of material fact regarding whether she was rendered of unsound mind at the time of, and as a result of, the February 10, 2003 accident and, therefore, the trial court should have evaluated her unsoundness-of-mind claim under the first paragraph of R.C. 2305.16, rather than the second. We disagree with this argument.
 {¶ 10} An appellate court reviews a grant of summary judgment de novo, and without deference to the trial court's ruling. Burgess v.Tackas (1998), 125 Ohio App.3d 294, 296. A court may grant summary judgment to the moving party only if that party demonstrates that (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C); Welco Industries, Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 11} In deciding a motion for summary judgment, the trial court must view the evidence in the record, as well as the inferences to be drawn from the underlying facts contained in the evidence, in the light most favorable to the nonmoving party. Turner v. Turner, 67 Ohio St.3d 337,341, 1993-Ohio-176.
 {¶ 12} R.C. 2305.10 states in pertinent part:
 {¶ 13} "(A) Except as provided in division (C) or (E) of this section, * * * an action for bodily injury * * * shall be brought within two years after the cause of action accrues. * * * [A] cause of action accrues under this division when the injury or loss to person or property *Page 4 
occurs."
 {¶ 14} R.C. 2305.16 states in pertinent part:
 {¶ 15} "Unless otherwise provided in sections 1302.98, 1304.35, and2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. * * *.
 {¶ 16} "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought."
 {¶ 17} "`Unsound mind' is defined in R.C. 1.02(C) as `including] all forms of mental retardation or derangement.'" Fisher v. OhioUniversity (1992), 63 Ohio St.3d 484, 487. "A `mentally retarded person' is defined by [former] R.C. 5123.01(K) [now R.C. 5123.01(N)] as `a person having significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior, manifested during the developmental period." Id. at 488. The word "`derangement' has been equated with insanity." Id., citing Webster's Third New International Dictionary (1986) 607.
 {¶ 18} During the summary judgment proceedings, appellant submitted two pieces of evidence in support of her unsoundness-of-mind claim: (1) her verified complaint, in which she alleged that she had been "incapacitated and not competent at all times to assist in the prosecution of her claim[,]" and (2) the affidavit of her treating physician, Harold C. Stratton, *Page 5 
M.D.[1] Dr. Stratton's affidavit stated in pertinent part:
 {¶ 19} "I have reviewed Plaintiff Julie Thomas-Davidson's medical records since February 10, 2003, in which I have found that she has suffered traumatic injuries, including a head injury that has caused occipital nerve damage.[2]
 {¶ 20} "* * * In reviewing the medical history since February 10, 2003, I have observed that during late November 2004 through March 2005, that Julie Thomas-Davidson suffered severe emotional distress including depression while still suffering anxiety and tremendous pain and delirium.
 {¶ 21} "* * * It is the opinion of this Affiant that Julie Thomas-Davidson by reason of her physical and mental state was of unsound mind from November 2004 through March 2005."
 {¶ 22} In reviewing appellant's unsoundness-of-mind argument, the trial court focused its attention on the second paragraph of R.C.2305.16, apparently, as a result of Dr. Stratton's affidavit wherein he stated that appellant, "by reason of her physical and mental state was of unsound mind from November 2004 through March 2005."
 {¶ 23} The trial court determined that appellant could not establish a genuine issue of material fact regarding whether she was entitled to have the statute of limitations tolled in this case under R.C. 2305.16, because: (1) appellant was not determined to be of unsound mind by a court of competent jurisdiction or by a psychiatrist or licensed physician during a period of confinement, and (2) the medical condition from which she allegedly suffered, i.e., occipital nerve damage, was not shown to have been generally accepted by the medical community as causing unsound mind. *Page 6 
 {¶ 24} Appellant tacitly acknowledges that the trial court was correct in so finding, but she argues that the trial court should have evaluated her unsoundness-of-mind claim under the first paragraph of R.C. 2305.16, because she was rendered of unsound mind simultaneously with the accident. We find this argument unpersuasive.
 {¶ 25} Initially, appellant did not expressly inform the trial court in her memorandum contra appellee's motion for summary judgment that she was raising her unsoundness-of-mind claim pursuant to the first paragraph of R.C. 2305.16, rather than the second. Furthermore, even when the evidence and any inference that can be drawn from it are looked at in a light most favorable to appellant, there is insufficient evidence in this record to create a genuine issue of material fact regarding whether appellant was rendered of unsound mind simultaneously with the February 10, 2003 accident, as she claims.
 {¶ 26} Although appellant asserted in her verified complaint that she "has been incapacitated and not competent at all times to assist in the prosecution of her claim[,]" appellant was clearly "not qualified, as a lay person purportedly experiencing an unsound mind, to render such a diagnosis." Johnson v. Allied Signal, Inc. (Oct. 8, 1999), Portage App. No. 98-P-0063.
 {¶ 27} Furthermore, Dr. Stratton's affidavit was clearly insufficient to create a genuine issue of material fact on this question. Dr. Stratton stated in his affidavit that appellant was of unsound mind from November 2004 through March 2005, even though he acknowledged having reviewed appellant's medical history from the date of the February 10, 2003 accident. There is nothing in Dr. Stratton's affidavit to indicate that he believed appellant's unsoundness of mind arose simultaneously with the accident. Under these circumstances, it is apparent why the trial court focused its analysis on the second paragraph of R.C.2305.16, rather than the first.
 {¶ 28} Appellant argues that this court cannot infer from Dr. Stratton's affidavit *Page 7 
testimony that she was not of unsound mind before November 2004, and further argues that when the evidence is viewed in a light most favorable to her as the nonmoving party, as required under Civ.R. 56(C), a reasonable trier-of-fact could infer from Dr. Stratton's affidavit that her unsoundness of mind arose simultaneously with the accident. We disagree with this argument.
 {¶ 29} While this court is obligated to view the evidence and all inferences that can be drawn from it in a light most favorable to the nonmoving party, see Turner, 67 Ohio St.3d at 341, we conclude that no reasonable juror could have inferred from Dr. Stratton's affidavit that appellant's unsoundness of mind began at the time of her accident. Under the circumstances of this case, such an inference would have amounted to nothing more than speculation. Cf. Almanza v. Kohlhorst (1992),85 Ohio App.3d 135, 137-138 (where evidence in the record showed that plaintiff suffered "a severe closed head injury" as a result of the accident for which she was bringing suit, there was sufficient evidence to indicate that the injuries plaintiff suffered as a result of the accident "simultaneously made her of unsound mind" for purposes of the first paragraph in R.C. 2305.16).
 {¶ 30} In light of the foregoing, we conclude that the trial court did not err in granting appellee summary judgment on the issue of whether appellant was entitled to the protections of the savings clause in R.C.2305.16.
 {¶ 31} Appellant's first assignment of error is overruled.
 {¶ 32} Assignment of Error No. 2:
 {¶ 33} "THE TRIAL COURT ERRED BECAUSE OUT-OF-STATE, PART-DAY TRIPS TOLL THE STATUTE OF LIMITATIONS IF PLAINTIFF COULD NOT SERVE DEFENDANT ON THOSE DAYS, BUT THE COURT RULED THAT PART-DAY TRIPS FROM BORDER REGIONS DO NOT TOLL THE LIMITATIONS PERIOD, WITHOUT EXAMINING THE CIRCUMSTANCES OF THE TRIPS AND PLAINTIFF'S OPPORTUNITY TO EFFECTUATE *Page 8 
SERVICE."
 {¶ 34} Appellant argues that the trial court committed reversible error in ruling that out-of-state, part-day trips generally do not toll the statute of limitations pursuant to R.C. 2305.15. We disagree with this argument.
 {¶ 35} R.C. 2305.15 states in pertinent part:
 {¶ 36} "(A) When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought."
 {¶ 37} The Ohio Supreme Court has stated:
 {¶ 38} "Where a defendant temporarily leaves the state after a cause of action accrues against him, he `departs from the state' within the meaning of R.C. 2305.15, and the time of his absence is not computed as any part of a period within which the action must be brought. (R.C.2305.15, construed.)" Wetzel v. Weyant (1975), 41 Ohio St.2d 135, syllabus. See, also, Johnson v. Rhodes, 89 Ohio St.3d 540, 542,2000-Ohio-235 (refusing to change the law announced in Wetzel, and concluding, instead, "that the limitations period provided in R.C.2305.10 is tolled when an individual temporarily leaves the state of Ohio for non-business reasons").
 {¶ 39} In his deposition, appellee stated that he would occasionally travel to Northern Kentucky to buy cigars. He testified that he bought cigars three to four times per year, but that he did not always go to Kentucky to buy them. The trial court, relying on Dusz v. Wilhelm (Oct. 30, 1985), Belmont App. No. 85-B-10, found that appellee's occasional trips to Northern *Page 9 
Kentucky did not toll the statute of limitations pursuant to R.C.2305.15.
 {¶ 40} Appellant, relying primarily on Pittman v. Boley (Apr. 26, 1991), Carroll App. No. 600, argues that "the trial court erred in summarily concluding that partial day trips could not be counted towards tolling the statute of limitations [since] the trial court failed to consider whether [appellant] could be served during his absence from the state."
 {¶ 41} The Ohio Supreme Court has not ruled on the issue of whether a part-day trip outside the state should be counted as one full day for purposes of R.C. 2305.15. Appellate courts in this state have come to somewhat different conclusions on this issue. For instance, in the case relied upon by the trial court, Dusz, Belmont App. No. 85-B-10, the court stated in pertinent part:
 {¶ 42} "The State of Ohio is not an island unto itself. The majority of the population of the State of Ohio resides in what best can be classified as border areas. Many of the citizens residing in the border counties daily leave the state for various reasons, many return the same day. These short trips should not be afforded `tolling' status."
 {¶ 43} However, in Pittman v. Boley, the Seventh Appellate District took a more flexible approach to the issue. The Pittman court stated that in cases where the defendant has taken an out-of-state trip for a period of less than one full day, the court should determine whether the defendant's absence for a fraction of a day is of such an extent that it was not possible for the plaintiff to commence the action and complete service. Id. If the defendant's absence made it impossible for a plaintiff to commence the action and complete service on that day, then that fraction of a day should be counted as a full day tolling the statute of limitations for a one-day period for purposes of R.C. 2305. Id.
 {¶ 44} In this case, appellant urges us to find that the trial court erred in summarily concluding that part-day trips outside the state cannot be used to the toll the applicable statute of limitations. Appellant essentially requests that we remand this matter to the trial *Page 10 
court to allow it to apply the test in Pittman. However, applying thePittman standard to the facts in this case would not change the outcome of these proceedings.
 {¶ 45} In this case appellee testified in his deposition that he was absent from the state for 11 full days during the two-year period following the accident: a six-day family vacation in Pennsylvania, a three-day trip to Chicago to referee a soccer tournament, and a two-day trip to see an NHL hockey game in Pennsylvania. Appellant also testified that he travels to Northern Kentucky on several occasions each year to buy cigars. Specifically, he testified that he bought cigars three to four times a year, but he did not always go to Kentucky to buy them.
 {¶ 46} If we assume, arguendo, that appellee bought cigars in Kentucky four times a year, for the two-year period following the accident, and count each of these trips as one full day, this would equal an additional eight days. Those eight days, added to the 11 days previously mentioned, would only amount to 19 days. This would still fall short of the 21 days by which appellant missed the deadline imposed by the applicable two-year statute of limitations for actions for bodily injury.
 {¶ 47} In light of the foregoing, we conclude that the trial court did not err in granting summary judgment to appellee on the issue of whether appellant was entitled to the protections of the savings provision in R.C. 2305.15.
 {¶ 48} Appellant's second assignment of error is overruled.
 {¶ 49} Judgment affirmed.
POWELL, P.J., and BRESSLER, J., concur.
[1] Appellant attached several pieces of evidence to her appellate brief that she did not present in the trial court and, thus, were not part of the record on appeal. This court granted appellee's motion to strike that evidence.
[2] Appellant does not define what "occipital nerve damage" is, but the term appears to refer to nerve damage to the back of the head. See Stedman's Medical Dictionary (1982) 974. *Page 1